DAVID D. BRAGAW, executor &c. of John Burnet, deceased,

v.

BELLE BOLLES et al.

Testator made his will two and one-half years before his death, when he was possessed of personal property worth about $30,000, and of real estate worth $10,000 to $15,000, using this language: "Whereas, owing to the uncertainty of life, it is always best to have our affairs in proper condition, I now proceed to write my will: 1st. After my funeral expenses and just debts are paid, I bequeath the following sums. 2nd. To my nephew" (&c., mentioning a sum of money, then follows twenty-one bequests in similar language, aggregating in amount $29,500). "25th. I hereby appoint B. M. & D. D. B. executors of this my last will and testament. Whether deficiency or surplusage, let it apply in either case *pro rata* to all, according to the sum bequeathed." Testator died seized of the land above mentioned, and his inventory amounted to $34,290, and there are no debts.—*Held*, the real estate was not affected by the will, and no power of sale by implication was given to the executors.

Final hearing on bill, answers and proofs.

The bill is filed by an executor for directions in the execution of the will.

The questions raised arise between the legatees and the heirs-at-law, and are, first, whether the real estate of which the testator died seized passed by the will, or whether he died intestate as to it; and, second, if it passed by the will, then whether the executors have a power of sale.

The will is a holograph, and was made about two and one-half years before testator's death.

So much of it as is necessary for the solution of these questions may be stated in a few words, as follows. It commences thus:

"*Whereas, owing to the uncertainty of life, it is always best to have our affairs in proper condition, I now proceed to write my will.* 1st. After my funeral expenses and just debts are paid, I bequeath the following sums, as follows: 2nd. To my nephew William H. Burnet, three thousand five hundred dollars. 3rd. To my nephew Charles A. Burnet, three thousand five hundred dollars."

Bragaw v. Bolles.

Then follow twenty other bequests, in the same language, to as many individuals, by name, of different sums of money, amounting in the aggregate to $29,500.

"25th. *I hereby appoint Benjamin Myer and David D. Bragaw executors of this my last will and testament. Whether deficiency or surplusage, let it apply in either case pro rata to all, according to the sum bequeathed.*"

Testator left personal property inventoried at $34,290, and no debts, and was seized of land worth from $10,000 to $15,000.

*Mr. John E. Howell,* for the complainant.

*Mr. James Steen,* for the beneficiaries under the will.

*Messrs. Jackson & Coddington,* for the heirs-at-law of the testator.

PITNEY, V. C.

It may be well doubted whether this court has jurisdiction to determine the first of the two questions presented by the pleadings and argued by the counsel of the heirs-at-law on the one side, and of the legatees on the other. But the bill was filed in good faith. All the legatees and heirs-at-law have been made parties, and one or more of each class has answered, asking the decision of the court upon the questions raised, and none have made any objection to the jurisdiction of the court. The questions have been elaborately argued, and the question whether any power of sale was given, being involved in the other question, viz., whether any disposition was made of the real estate, both have been considered, and I will, therefore, state the conclusion at which I have arrived.

The testator lived about two and one-half years after the execution of this will. His personal estate was inventoried and appraised at $34,290, and he owed substantially no debts. The personal estate consisted mainly of securities in Newark and New York gas companies. There were, besides, a few shares of bank stock, and ninety shares of $100 each in a supply company.

The legacies amount to $29,500. He also died seized of real estate worth from $10,000 to $15,000.

The testator was not engaged in any active business, and the proofs negative the idea that any material change occurred in his pecuniary situation between the date of his will and his death, so that the case was argued upon the agreed assumption that, at the date of the will, the testator was possessed of the same estate, less accretions by savings out of the annual earnings, that he left at his death.

Putting ourselves, as we may and should, in his position at that date, we find him possessed of an estate consisting mainly of shares in incorporated companies, which he might well suppose would realize about $30,000, after paying the expenses of settling his estate, but which had no exact value, such as a first-class bond and mortgage, and might fluctuate in price so as to produce, when sold, either a little more or a little less than that sum. In this situation we find him giving away in money $29,500, and then follows the clause relied upon by the legatees : "Whether deficiency or surplusage, let it apply in either case *pro rata* to all, according to the sum bequeathed."

Now, it is obvious at once that the testator might have written every word of that will if he had not owned any real estate, and therein have made a prudent and reasonable will. There is nothing in it which indicates that he relied at all upon his real estate to help pay the legacies, or was conscious of owning any real estate. The indications are the other way, for if he had supposed his real estate was to be resorted to to pay the legacies, or, rather, if it was to be divided with his personal property, it is improbable that he would have had any fear of a deficiency or felt it worth while to provide against that contingency, since the real estate added to the personalty would have put the sufficiency of the assets beyond all peradventure.

Then, again, observe there is here no general gift over of the residue, such as was held in *Corwine* v. *Corwine, 9 C. E. Gr. 579,* to charge the legacies on the land. The case seems to me to come within the rule laid down by Chancellor Green in *Leigh* v. *Savidge, 1 McCart. 124,* and approved by the court of errors

and appeals in *Johnson* v. *Poulson, 5 Stew. Eq. 390* (at *p. 395*), where Judge Dodd uses this language :

" The situation of the testator's property at the making of the will, and the relative amounts of his real and personal estate, do not favor the opinion that he meant to charge both classes of bequests on the farm.   It is established in this state that parol evidence is admissible to show the nature, situation and amount of the testator's property, in order to arrive at his intention to charge legacies on the realty.   *Leigh* v. *Savidge, 1 McCart. 124.* Such, however, is the presumption against a charge, unless distinctly imposed, that though the insufficiency of the personal estate to pay legacies, when so made to appear, creates a strong impression in favor of an intention to charge them, yet, standing alone, it is not enough as against heirs to effect such a charge. Proofs were taken in this case.   It is unnecessary to advert to them further than to say that they do not establish satisfactorily the insufficiency of the personal estate.   The devise of the farm, free from the legacies in dispute, does not seem to have been unsuited to the distribution of his property, as directed in his will, among his daughters and sons."

If the rule laid down in *Leigh* v. *Savidge* still prevails in this state, I fail to see how the legacies in this will could be charged on the land, if that were the question presented.   The will there, as here, contains no specific devise or mention of the land in question, nor any general gift of the residue, but there was in *Leigh* v. *Savidge* a deficiency of personalty which was known to the testator at the time he made his will, and there was no heir-at-law, and both those circumstances were relied upon by Chancellor Green, while here there is no deficiency and there are heirs-at-law.

The chancellor uses this language (at *pp. 129, 130, 133, 134*) :

" Personal estate is the primary fund out of which legacies are payable.   The real estate is not charged with the payment of legacies, unless the testator intended it should be ; and that intention must be either expressly declared, or fairly and satisfactorily inferred from the language and dispositions of the will. *   *   *   The will in question contains no *express* declaration

of the testator's intention that the real estate should either be charged with or sold for the payment of the legacies. Nor does the will contain any of the clauses which are ordinarily relied upon as manifesting that intention. * * * If, then, the intent of the testator must be sought in the will alone, to the exclusion of all extrinsic facts, it must, I think, be held that the real estate cannot be sold for the payment of the legacies. If the construction contended for is to be given to the will, it must be by the aid of extrinsic facts. * * * It appears that at the date of the will the testator's personal property was entirely inadequate to satisfy the legacies given by the will, and so continued till the time of the testator's death. With the exception of the house and lot specifically devised, the testator made no disposition whatever of his real estate. The amount of the legacies given by the testator, making a reasonable allowance for the costs and expenses of settling his estate, was equal to the combined value of his personal and real estate not specifically devised. This relation of the amount of the legacies to the value of his real and personal estate was not fortuitous, but the result of design. At the time of making his will, the testator had before him a schedule of his personal and real estate not otherwise disposed of, with an estimate of the value of the real estate. The relation thus existing between the amount of the legacies and the value of the real and personal estate continued without material change till the time of the testator's death. And not only were the legacies bequeathed to an amount equal to the value of the personal and real estate, but unless the legacies are made a charge upon the land, and the last clause of the will so construed as to give power to the executors to sell the real estate for the purpose of paying the legacies, the testator died intestate as to the bulk of his real estate. A will ought not to be so construed as to produce such intestacy. The natural and reasonable presumption is, that when a will is executed the testator designs to dispose of his entire estate and does not intend to die intestate as to any part of his property. These circumstances create a strong impression that the testator designed to charge the legacies upon the real estate. But standing alone, I think they are

not sufficient, upon well-settled rules of construction, to subject the land to the payment of legacies. *Heirs have always been looked upon with favor by courts of justice, and the rule is well settled that plain words are required to disinherit them; and as plain words are necessary to disinherit an heir, so words equally plain are requisite to charge the estate of an heir,* for a charge is *pro tanto* a disinherison of the heir.

"If, therefore, there was an heir to take the estate undisposed of by the will, the legal presumption would be that it was not the design of the testator that he should be disinherited or the inheritance charged with legacies. But in this case the testator had no inheritable blood. He left no lineal descendants. He therefore neither had, nor by legal possibility could have, any heir to whom the estate in case of intestacy could descend. It must escheat to the state. The legal presumption in favor of the heir does not exist to influence the construction. And the only question is, whether the testator intended that the legacies which he had given to the objects of his bounty should fail, and his lands escheat to the state, or whether the real estate should be applied to carry into effect the trust which he had created."

But let us waive all technical rules, and lay out of view all decisions of the courts upon other wills, and inquire what the testator meant from a study of the language he has used, in the light of the situation of his affairs as described by the evidence, and in the view of his acquaintance with affairs in general and the use of the English language as displayed by his will.

He was an elderly gentleman, long a resident of Newark and far from illiterate, and, so far as appears in his will, he was by no means lacking in intelligence and the possession of general information. He must be presumed to have understood the meaning of the language he employed, and to have had a general understanding of the laws of his state and of the duties and powers of executors. He must be presumed to have known that executors, after probate of the will, would have power to take possession of and turn into money all personal property without any express power given them for that purpose by the will, and that, for that reason, a simple gift of money would be satisfied

by his executors, in the regular course of their administration of his estate, out of the proceeds of his personal property. But he must further be presumed to have known that they, the executors, would have no power to deal with real estate except to pay debts, unless power for that purpose was expressly, or by necessary implication, given them by the will, and that, therefore, a gift of money was not a gift of the proceeds of the sale of land, unless power was given to his executors to sell it for that purpose. He must, presumably, have known that the ordinary way of giving land, or an interest or share therein, was to give it directly by mention of the land, or to direct his executors to sell it and dispose of the proceeds as he wished.

Now, the absence of any mention of real estate, standing by itself, seems to me significant; and it is especially so in connection with the fact that every word of the will can be satisfied, and the legacies paid in full, without resort to the real estate. I have said every word in the will may be satisfied without touching the real estate. The words " deficiency and surplusage " as they are there used may be satisfied by applying them to the proceeds of the personalty which would come into the hands of the executors in the performance of the ordinary duty of administering the estate, which duty fell upon them precisely as it would fall upon administrators if there had been no will. And it seems to me that these words are naturally and fully satisfied in that way when we consider the situation of the testator's property and his presumed intelligence above referred to.

I am unable to give the word " surplusage " the same force and effect in this context as " rest " or " residue." I think " surplusage " has a somewhat more restricted meaning than the others, and is more properly applied to money than lands. " Rest " and " residue " naturally include all property of every nature.

We have here no gift or mention in words of " all my property," or " the residue of my property," or any equivalent words. There is nowhere any expression indicating any massing of all his property. The introductory clause relied upon for that purpose seems to me to fail in that respect: " Whereas, owing to

the uncertainty of life, it is always best to have *our affairs* in proper condition, I now proceed to write my will." The word " affairs " in this connection seems to me to refer to the condition and management of property, and not to have the force of property itself. I find in its use here no indication of an intention to dispose of all his property, including land. The law casts land directly upon the heir-at-law; and if a person seized of land desires that it shall, at his death, go to his heir or heirs-at-law, and he have no personalty and no debts, his " affairs *are* in proper condition " and there is no occasion for him to make a will. But if a person be possessed of personalty, and he has ordinary intelligence and general information, he knows that at his death that personalty will not go directly to his next of kin, but can be reached by them only through the instrumentality of administration by persons to be appointed either by himself or the court, and he may have a judgment and choice as to who shall act as such, and for that reason alone may desire to make a will, although the bequests be to the next of kin only, and in the very shares in which they would take without a will. Here the testator had no descendants and several collaterals, and might well feel that he was not leaving his " affairs in proper condition " without appointing executors to settle his estate.

For these reasons I fail to see in the use of the words in question any expressed intention that the testator intended to dispose of all his property.

Turning again to the decided cases, and looking at what the courts have thought of similar expressions in other wills, I am unable to find any which have gone the length contended for by counsel of the legatees.

In *Hughes* v. *Pritchard, L. R., 6 Ch. Div. 24,* the words were : "As to *the estate which God has been pleased* in his good providence to *bestow upon me I* do make and ordain this my last will and testament as follows, that is to say." The will then proceeds to give a freehold farm to one, and another freehold farm to another, devisee. There are divers legacies of personalty, general and specific, and the will closes thus : "And I make my sister Mary Pritchard and brother Richard Hughes, and my

Bragaw *v.* Bolles.

brother-in-law Owen Pritchard, my residuary legatees," and then appoints executors. It was held by Vice-Chancellor Hall that this will did not cover and pass to the residuary legatees named the title of certain real estate not specifically mentioned. But this decision was overruled on appeal by Sir George Jessel, master of the rolls, and Lord-Justices James and Bramwell.

It is obvious that the present case is quite outside of it. The word " *estate* " there used includes both real and personal property and is tantamount to " all my property." There is no word of equal force in the will here under consideration. The word " affairs," as already remarked, does not mean either property or estate. The English case was put upon the ground not only of the use of the word " estate," but also of the mention and disposition of land in and by the will.

Lord-Justice Bramwell says (at *p. 28*) : "After giving, as has been observed, gifts of personalty and devises of realty, he finishes in this way : ' I make my sister Mary Pritchard and the others my residuary legatees ;' that is to say, legatees of the residue. Residue of what? Why, residue of that of which he had been previously disposing of parts. Of what had he been previously disposing of parts? Of his realty and personalty."

And Sir George Jessel says (at *p. 27*) : " I agree that *an appointment of residuary legatees standing alone in a will would be a gift of the personal estate only. That is settled by authority.* To what extent that ought to be modified by other devises and bequests it is not necessary now to consider, because, looking at the preliminary words, the testator, as it seems to me, has told us in express terms that he has disposed by his will of all his property."

The most recent English case I have found is *In re Methuen and Blores' Contract, L. R., 16 Ch. Div. 696.* There the words were these : " I commit to paper my wishes respecting the disposal of *my property* and give this as my last will and testament ; everything I am possessed of I leave to my dearest sister S. P. for her life ; after her death I give and devise as hereto annexed." Then follow a number of pecuniary legacies, and the will proceeded as follows : " My two nephews H. H. and H. H. M. and

F. P. M., I leave my executors, and *the latter residuary legatee after the demise of my sister."* Then followed other legacies, as to one of which the word "devise" was used. The testatrix had no real estate at the date of the will, but purchased some subsequently and died seized of it. The residuary legatee contracted to sell it, claiming title under the will. The purchaser objected to the title, and Sir George Jessel sustained the objection and held that the land did not pass. He uses this language (at *p. 699*), which I think is in a measure applicable to the case in hand: "Now this lady having only personal estate begins her will in this way: 'I commit to paper my wishes respecting the disposal of my property;' that does not dispose of her property; it is only her 'wishes respecting the disposal of my property.' It does not follow that her wishes would dispose of the *whole* of her property. It may well be that her wishes up to that time only related to *part* of the property and still those words are fulfilled. It is only her wishes as to the disposal of it. * * * Her wishes may have fallen short of the disposal of the entirety."

With regard to the closing words—in the will in hand— "whether deficiency or surplusage, let it apply in either case *pro rata* to all, according to the sum bequeathed"—I find no decided case furnishing similar language. There is a class of cases, like the two just cited from the English reports, where the bare appointment of a "residuary legatee" has been held to amount to a *devise* of the residue, including land. Of these, *Laing* v. *Barbour, 119 Mass. 523,* is a further example. The testatrix by her will in that case made various specific bequests of personal property, and then inserted this clause: "I constitute and appoint Joseph W. W. my residuary legatee." Then she made a specific disposition of certain property, real and personal, bequeathed to her by her brother, and certain property she expected to receive by the will of her sister, "and any other property that may come into my possession." She died seized of land not mentioned in the will. Held, that it passed by the will under the implied gift of the residue.

The court puts its judgment on the ground that real estate was

Bragaw v. Bolles.

distinctly dealt with in the will, saying (at *p. 525*): "That it was the intention of the testatrix to dispose of both her real and personal estate, is sufficiently indicated by the clauses of the will which dispose of the property bequeathed to her by her brother and 'any other property that may come' into her possession. The word 'property' includes real estate, and there was real estate upon which the first of these clauses could operate.   *   *   * When, therefore, the testatrix, owning real estate other than that which came to her from her brother, constituted J. W. W. her 'residuary legatee,' it must be considered that by this term she intended that the residuum of her estate, both real and personal, should pass to him."

This reasoning is not very satisfactory, and it seems difficult to reconcile it with that relied upon in the *Methuen Case* above cited and decided by Sir George Jessel.   But *Laing* v. *Barbour* is quite distinct from the case in hand.   That and the other decided cases of the same class were, as already remarked, put upon the circumstance that the will dealt expressly with real estate, and that there was a disposition of the residue. *Evans* v. *Crosbie, 15 Sim. 600 ; Day* v. *Daveron, 12 Sim. 200 ; Pitman* v. *Stevens, 15 East 505 ; Windus* v. *Windus, 6 De G., M. & G. 549 ; Singleton* v. *Tomlinson, L. R., 3 App. Cas. 404 ; Davenport* v. *Coltman, 9 Mees. & W. 481 ; 12 Sim. 588 ; Wildes* v. *Davies, 22 L. J., Ch. 495 ; 1 Sm. & G. 475.*

Now here there is no mention of real estate, and if the testator had in so many words constituted his several legatees residuary legatees, the authorities would still fall short of supporting their claim to the land.

Among the numerous adjudged cases cited in *Jarman on Wills* (*pp. 716–750 (R. & T. ed.) vol. 3 pp. 315–350*), in which general language and that properly applicable only to personalty has been held to apply to land, I can find none that will warrant the construction contended for.

As already stated, the word "surplusage" seems to me to indicate that the testator had in his mind money rather than land, and that he meant simply that if after turning his personalty into money and paying the several legacies his executors should

have in hand a surplus of moneys, they should divide it among the legatees named.

Looking, then, at the will as a whole, bearing in mind the rule that the inquiry is not as to what the testator meant to say, but rather what he meant by what he did say, and that the heir is not to be disinherited except by a clear expression of intention to that effect, I am unable to find any such here, and must so advise.